Judge Mills
delivered the opinion of the court.
Asa Wilgus exhibited his bill in the court below, stating that William Tandy, by his last will and testament, devised to sundry devisees certain parcels of the tract of land on which he lived; and among the rest devised one fourth part thereof to his widow Jane Tandy, who survived her husband for several years, and died, having previously made her last will and testament, wherein she divised her fourth part, granted to her by the will of her husband, to her son-in-law John Allen, and his heirs forever, in trust, and for the purposes following, to wit: that he should suffer her daughter, Milly Chinn, the wife of Christopher Chinn, separately and to her own use, and apart and distinct from her husband, to have, hold, occupy, possess and enjoy the said moiety of the said fourth part of the said tract of land, for and during the term of her natural life, and in trust that he should suffer her said daughter Milly to receive and take to her own use, separate, apart and distinct from her husband, the rents, issues and profits of said land, for and during the term of her natural life, and after her death in trust that he should suffer or permit such person or persons as her said daughter Milly should by her last will and testament in writing appoint, them and their heirs to have, hold, occupy and possess, and enjoy the said land, to them and their heirs forever. But in default of such appointment she devised the said land, after the decease of her said *329 daughter Milly, to the said John Allen and his heirs forever. He then proceeds to state, that after the decease of Christopher Chinn, and during the widowhood of Milly, he bought the said land of her, and received a deed from her for the same, fully supposing and believing that she had the absolute right to sell. That he afterwards sold and conveyed the same land being ninety six acres by two several conveyances to Patterson, receiving therefor a consideration, somewhat larger than he had paid; and warranting by said deeds the title to the land by general warranty.—That John Allen is dead, and that Milly Chinn, had since married to ThomasHughes—that he had paid the purchase money to Hughes, except a balance for which judgment is obtained by him, which he prays to enjoin. He then alledges that it had been not more than six weeks since he was possessed of the facts and circumstances, which made the title defective, and that on the discovery, he had applied to Patterson to rescind the contract, restore the possession and receive the purchase money back again; but he had refused to do so. He further alledges that he had also discovered that until after his sale to Patterson no division had taken place between the devisees of William Tandy; and that a division has subsequently taken place, to which he was no party, that the share of Mrs. Chinn, now Mrs. Hughes, had been assigned some what different from what it was, and that instead of ninety six acres, one hundred and two, had been alloted to her, and that she and her present husband had again conveyed the ninety six acres only, by a subsequent deed, which neither he nor Patterson had accepted, and he claims the whole one hundred and two as his purchase. He prays for, and obtains an injunction against Hughes and wife for the balance of the purchase money, prays that the contract between him and Patterson may be dissolved; he restoring the purchase money, and Patterson the land, and that the contract between him and Mrs. Hughes may be rescinded, and the parties all round, placed as near as may be in the original situation.
Hughes and wife admit most of the allegations of the bill, alledged that they supposed the title to be a good one—deny that the complainant was ignorant of the whole state of the title, when he purchased—alledge that he was made fully acquainted with it; but agree that the contract may be rescinded, and unite with the complainant in prayer to that effect. The defendant Patterson denies the ignorance of *330 the complainant of the title—declares he believed it a good one, when he purchased; denies that the complainant ever offered him back his money, but only talked with him about rescinding, as he supposes for the purpose of inveigling him into some difficulties with regard to it; declares his wish to retain the land, if a good title can be made to him; relies on his conveyance with warranty, and resists the claim of the complainant as well as that of Hughes and wife, to recision of the contract. The circuit court dissolved the injunction and dismissed the bill from which, decree Wilgus has appealed.
Was Wilgus asking a recision of the contract alone, between himself and Mrs. Chinn, now Mrs. Hughes, because the title was defective, which she had sold him, if there had been a concealed or a mistaken defect of the title which he had purchased, there could not be much difficulty in granting relief, and if there was neither fraud nor mistake in the sale, as Hughes and wife unites in the prayer to rescind, the relief could be easily afforded. But as Wilgus has sold and conveyed the same land to Patterson, and prays, first, to be relieved from his own contract, before he can restore to Hughes and wife, and his vendee Patterson refuses, his case presents quite a different attitude. Strong indeed must be the case, which would authorise relief to be granted to a party, who seeks it against his own contract, and on account of the defects existing in the title which he himself had sold. It ought clearly to appear that he was ignorant of the facts from which the defects resulted, and that innocently trusting and believing that he had a good estate, he had sold it, and that in a reasonable time after, discovering the facts which evidenced the mistake, he had offered to restore to his vendee what he had received, to place him in statu quo. To decide whether the estate sold in this instance is defective, and whether the heirs of Allen, on the death of Mrs. Hughes, without will, making the appointment allowed, or whether her devisee or appointee, hereafter designated by will could claim the estate has not been deemed necessary by the court. For the innocence of the appellant in his sale to Patterson must first be proved. At the time of his purchase from Mrs. Chinn, he received from her a deed which be exhibits as a part of his bill.—This deed on examination, is not only executed by her, but also by John Allen, the trustee in whom the legal estate rested. It also recites and refers to the will of William *331 Tandy, the devise of Jane Tandy, the power of Mrs. Chinn, to appoint by will, under the will of Mrs. Tandy, and declares that she had made a will devising the land to Wilgus himself, which she had delivered to him, and which he has not thought proper to exhibit to the court. The very deed, which he has accepted, then, not only shews the sale to be fair on the part of Mrs. Chinn, and her trustee, but apprizes Wilgus himself of every fact and circumstance, before his sale to Patterson; from which same facts and circumstances, he now attempts to shew, a defective title. He cannot, then, the allegations of his bill notwithstanding, have been ignorant of these facts, and for this reason, cannot be entitled to relief. His ignorance of the inference which the law deduced from these facts, cannot entitle him to relief. Mistakes in law, cannot of themselves be a ground for rescinding a contract. He must be presumed to know the law. And if he did not in fact know it, it was as accessible to him then, as it is now, and he ought to have been as well advised of its operation on the title before he purchased, as he now is, after he has sold the same estate to Patterson, and there is a violent presumption that he thus then, understood his case; but did not avail himself of this knowledge, while he was receiving money from Patterson for the estate; but thinks it convenient to do so, when pressed by Hughes and wife, for payment for the same estate. To provide against the very results, against which, he now attempts to guard himself, he took from Mrs. Chinn a will to fulfil the appointment authorised by Mrs. Tandy’s devise, but now cannot admit that will to be of any force, after he has parted with the estate. The decision of the circuit court is therefore deemed correct, and must be affirmed with costs and the cause remanded with directions to that court to render a decree there for ten per centum damages on the ten per centum damages first given by that court, on a dissolution of the injunction.